TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-03-00381-CV






Robert S. Howell, D.C.; First Rio Valley Medical, P.A.; Keith Gilbert;

William Maxwell; and Gilbert & Maxwell, P.L.L.C., Appellants


v.


Texas Workers' Compensation Commission; Envoy Medical Systems, L.L.C.;

Texas Mutual Insurance Company; State Office of Risk Management; and

Continental Casualty Insurance Company, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. GN200967, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING





O P I N I O N




 In this case, we must decide whether, when a health care provider provides medical
treatment to a workers' compensation claimant and subsequently disputes the adequacy of payment
by a workers' compensation insurance carrier, the health care provider must first exhaust
administrative remedies within the workers' compensation system before seeking to resolve the
dispute in a court. We must also determine whether, after one party files a declaratory judgment
action in a Travis County district court, that court obtains jurisdiction to grant a counterclaimant's
request for an anti-suit injunction prohibiting the original party from pursuing related suits in the
courts of another Texas county.


 Appellants Robert S. Howell, D.C. and First Rio Valley Medical, P.A. (collectively,
"First Rio") appeal a judgment rendered in favor of appellees Texas Workers' Compensation
Commission; Envoy Medical Systems, L.L.C.; Texas Mutual Insurance Company; State Office of
Risk Management; and Continental Casualty Insurance Company. The district court rendered
judgment that First Rio must first exhaust administrative remedies before seeking judicial review
of a dispute with a carrier and that the independent review organization ("IRO") fees for medical
necessity reviews are constitutional. Pursuant to the declaratory action, the district court awarded
attorney's fees to the Commission, Texas Mutual, and Continental Casualty. (1) The district court
further enjoined First Rio from prosecuting the approximately 723 billing dispute lawsuits that it had
filed in Cameron County and from filing a new lawsuit until it has received a final, non-appealable
decision in its favor through the administrative process and the carrier has refused to pay.

 In nine issues, First Rio asserts that (i) the district court was without jurisdiction to
enter the anti-suit injunction; (ii) the district court erred in finding that First Rio, when disputing
adequacy of payment, must exhaust administrative remedies within the workers' compensation
system before seeking review in a court; (iii) the district court abused its discretion in denying First
Rio's demand for a jury trial; (iv) the district court erred in granting declaratory relief because the
declaratory action was an improper vehicle for attorney's fees; (v) the district court erred in granting
declaratory relief because it was an improper advisory opinion; (vi) the district court erred in finding
that Dr. Howell is a proper party to appellees' counterclaims; (vii) some of the district court's rulings
violated the United States and Texas Constitutions; (viii) the district court erred in finding that First
Rio and Dr. Howell are vexatious litigants; and (ix) the district court erred in finding that the IRO
fee is constitutional. We do not find any error pertaining to these issues.

 In a separate issue, appellants Keith Gilbert, William Maxwell, and Gilbert &
Maxwell, P.L.L.C. (collectively, "the law firm"), counsel for First Rio, assert that the district court
abused its discretion by twice imposing sanctions on them. The district court first imposed $13,000
in sanctions pursuant to Texas Mutual's motion for sanctions and second sua sponte imposed $3,200
in sanctions after counsel for First Rio did not appear at the hearing on the motion for judgment. As
to Texas Mutual's motion for sanctions, because we affirm the grounds for the sanctions only in part,
we remand the issue for recalculation of attorney's fees sanctions in accordance with this opinion. 
As to the $3,200 award, although the district court did not afford the law firm an opportunity for
notice and hearing before imposing those sanctions, the law firm failed to preserve error by not
affording the district court an opportunity to correct its mistake.

 Because only the Commission and the State Office of Risk Management sought
permanent injunctive relief, and pursuant to Continental Casualty's request, we reform the judgment
to delete the reference to Continental Casualty as one of the parties seeking a permanent injunction. 
We affirm the judgment in all other respects.


FACTUAL AND PROCEDURAL BACKGROUND

Changes to Commission's Administrative Review Process

 First Rio's causes of action arise from the 2002 changes in the Commission's
administrative review of an insurance carrier's denial or reduction in payment of a medical bill. To
put the events giving rise to this case in context, we will begin with some background concerning
the 2002 amendments.

 When a health care provider seeks payment from an insurance carrier for treatment
of a workers' compensation claimant, it must first submit the medical bill to the carrier. 28 Tex.
Admin. Code § 134.801(a) (2004). (2) If the carrier denies or reduces the payment and the health care
provider is dissatisfied with the carrier's action, the health care provider is entitled to a review of the
medical service. Tex. Lab. Code Ann. § 413.031(a)(1) (West Supp. 2004). Before pursuing further
action, the health care provider must first send a request for reconsideration to the carrier. 28 Tex.
Admin. Code § 133.304(k), (m) (2004). If still dissatisfied with the carrier's action, the health care
provider may request medical dispute resolution. Id. § 133.304(m). The Commission shall by rule
establish "a program for . . . resolution of a dispute regarding health care treatments and services." 
Tex. Lab. Code Ann. § 413.013(1) (West 1996).

 Until January 1, 2002, the Commission's medical review division handled all medical
dispute resolution matters, falling into two categories: medical fee disputes and medical necessity
disputes. See 25 Tex. Reg. 2128 (2000) (codified at 28 Tex. Admin. Code § 133.305) (adopted Mar.
10, 2000). After that date, pursuant to House Bill 2600 passed in the 2001 legislative session, IROs
began to conduct medical necessity reviews of health care provided to workers' compensation
claimants. (3) The medical review division continued to handle medical fee disputes. See 28 Tex.
Admin. Code § 133.307 (2004).

 IROs were created in 1997 to perform reviews of medical necessity in disputes
between medical insurance carriers and persons insured by employer-provided health benefit plans. (4) 
The Texas Department of Insurance regulates IROs. Tex. Ins. Code Ann. art. 21.58C (West Supp.
2004). Concerning the role of an IRO in the workers' compensation system, a health care provider
seeking review of a medical necessity dispute involving denial or reduction of payment for medical
services must file its request with the carrier and the medical review division of the Commission. 
28 Tex. Admin. Code § 133.308(d) (2004). The review of the medical necessity of medical services
already provided, which is the type of review at issue in this case, is called a "retrospective necessity
dispute." Id. § 133.305(a)(4) (2004). The Commission forwards the request to an IRO. Id.
§ 133.308(j). The IRO then notifies the parties of the assignment and requests documentation. Id.
§ 133.308(k). The health care provider must submit the documents and at the same time submit the
fee for the IRO review. Id. § 133.308(k), (r). The fee for review by a medical doctor is a "tier one"
fee, $650, and the fee for review by other health care providers, including chiropractors, is a "tier
two" fee, $460. Id. § 12.403 (2004) (setting out fee structure); § 133.308(r)(6) (stating that
"independent review by a doctor of chiropractic shall be paid the tier two fee"). (5) If a health care
provider prevails in a retrospective necessity dispute with a carrier, the carrier must reimburse the
provider the IRO fee. Id. § 133.308(r)(2).

 After review of either a medical fee or medical necessity dispute, the nonprevailing
party may request a contested case hearing before the State Office of Administrative Hearings
(SOAH). Id. § 133.307(p) (medical fee disputes), § 133.308(u) (medical necessity disputes). A
party who has exhausted its administrative remedies and is aggrieved by a final SOAH decision
concerning a medical fee or medical necessity dispute may seek judicial review of the decision in
a Travis County district court as governed by chapter 2001 of the government code. Id.
§ 133.307(p)(4) (medical fee disputes), § 133.308(u)(7) (medical necessity disputes); see Tex. Gov't
Code Ann. § 2001.176(b)(1) (West 2000) (requiring request for judicial review to be filed in Travis
County unless otherwise provided by statute). We now turn to the events giving rise to First Rio's
causes of action and the subsequent proceedings.


First Rio's Challenge to the IRO Fee Rules and Ensuing Counterclaims

 Robert Howell, D.C., a chiropractor, is the clinic director and owner of First Rio
Valley Medical clinic in Brownsville. The parties have stipulated that workers' compensation
claimants constitute seventy to eighty percent of First Rio's business. In March 2002, First Rio filed
suit in Travis County against the Commission and Envoy, an IRO, challenging the constitutionality
of the IRO fee rules, seeking declaratory relief concerning the validity of the rules, and seeking an
injunction to permit First Rio to file medical necessity disputes without having to pay the IRO fee. 
In May and June 2002, shortly after this Court held that the Commission had improperly delegated
audit powers of medical bills to private insurance carriers, (6) First Rio filed approximately 723 suits
against workers' compensation insurance carriers in Cameron County justice of the peace courts,
seeking payment of medical bills that the carriers had either partially paid or denied, in addition to
$1050 in attorney's fees for each of the suits.

 On June 20, 2002, the Commission filed its original answer and counterclaim, seeking
a declaration that First Rio is required to pursue adequacy of payment disputes according to the
Commission's statutes and rules, and temporary and permanent injunctive relief enjoining First Rio
from pursuing and filing its "continued pursuit of multiplicitous and vexatious litigation" in the
Cameron County courts. The next day, at the hearing on the Commission's request for a temporary
restraining order ("TRO"), Texas Mutual filed a petition in intervention and First Rio filed a motion
to sever the injunctive claims and transfer them to Cameron County. (7) At the hearing, the district
court entered a TRO enjoining First Rio from pursuing its existing suits and filing new suits that seek
"payment for medical services provided to injured workers under the Texas workers' compensation
system." Soon thereafter, Continental Casualty and the State Office of Risk Management also filed
petitions in intervention.

 On July 1 and 2, 2002, the district court held a hearing on appellees' request for a
temporary anti-suit injunction as to the Cameron County lawsuits. Dr. Howell testified at the hearing
that he planned to file suits every time that a bill is denied or reduced and to continue to do so unless
the court told him otherwise. On July 5, the district court granted the temporary injunction,
enjoining First Rio from filing any new lawsuits until receiving a final order from the Commission
"ordering a carrier to pay Howell/First Rio and that payment has not been made as required by law"
and from pursuing the suits already filed unless the suit is to enforce a Commission order. The
court's order also set the case for trial on the non-jury docket for September 30, 2002. Soon
thereafter, First Rio filed two actions in this Court: an interlocutory appeal of the temporary
injunction, which was subsequently dismissed as moot after final judgment was rendered in this
case, (8) and a petition for writ of mandamus challenging the district court's authority to grant the
temporary injunction, which was denied because First Rio had an adequate remedy by its
interlocutory appeal. (9)

 The case was later assigned to a specific district court, which did not have time
available on its docket for the September 30, 2002 trial setting. The Commission, after conferring
with other parties, then set the case for a non-jury trial on December 10, 2002. In mid-October, after
the trial had been reset for December 10, First Rio filed a jury demand and jury fee. On November
18, the attorneys for First Rio obtained an ex parte TRO in another cause of action in Cameron
County prohibiting Texas Mutual from pursuing various lawsuits against First Rio, including the
instant case. The TRO expired fourteen days later. See Tex. R. Civ. P. 680. On December 3, Texas
Mutual filed a motion to strike First Rio's jury demand, on the grounds that the demand was
inconsistent with First Rio's agreement, not filed a reasonable time before trial, would injure other
parties in the suit, would disrupt the court's docket, and was filed for the purpose of delay. First Rio
filed a motion for continuance the next day on the ground that a medical condition prevented Dr.
Howell from being available for trial.

 On December 10, in preliminary matters to the trial, the district court granted Texas
Mutual's motion to strike First Rio's jury demand and denied First Rio's motion for continuance. 
The case proceeded to a three-day, non-jury trial on the merits beginning on December 11. At the
conclusion of the trial, the district court granted declaratory relief requiring payment disputes to be
handled through the Commission's administrative procedures and issued a permanent injunction
enjoining First Rio from filing new suits and pursuing the suits already filed in Cameron County
except as allowed by rule or statute. The court also stated an intention to award attorney's fees to
the prevailing parties.

 During the trial, Texas Mutual filed a motion for sanctions against First Rio's law
firm, pursuant to rule of civil procedure 13 and the court's inherent authority. In this motion, Texas
Mutual alleged that the attorneys had "embarked in a litigation campaign" that constituted a "bad-faith abuse of the judicial process," filed "false affidavits and frivolous pleadings," "obstructed the
discovery process," and abused the judicial process in obtaining the ex parte TRO in another case. 
Texas Mutual filed an amended motion for sanctions on January 8, 2003, adding rule of civil
procedure 215 as a basis for sanctions. The court held a hearing on this motion on January 17, 2003,
at which representatives of the law firm and Texas Mutual's attorney presented evidence. Shortly
thereafter, Texas Mutual filed a supplement to its amended motion. On March 25, 2003, the district
court entered an order granting the amended motion for sanctions in which it found, inter alia, that
the respondents had: obtained the ex parte TRO "for the purpose of preventing discovery and
delaying trial," "engaged in extraordinary efforts to prevent Texas Mutual from taking the
depositions of the Respondents' clients," "designed and carried out a vexatious litigation campaign,"
and "made false statements of material fact to the Court" at the hearing on the motion for sanctions. 
The court also awarded $13,000 in attorney's fees sanctions to Texas Mutual.

 The district court sua sponte imposed further sanctions upon the law firm after
counsel for First Rio did not appear at the May 28, 2003 hearing on the motion for judgment. The
hearing was held after discussions in the preceding months among the parties about the proposed
judgment. At the hearing, counsel for the Commission stated that counsel for First Rio that morning
had faxed a letter asserting objections to the proposed final judgment. After hearing evidence that
counsel for First Rio had received notice of the proposed final judgment well in advance of the
hearing, the district court imposed sanctions of $3,200 upon the law firm, representing two hours in
attorney's fees for each of the eight counsel present at the hearing.

 The court then rendered a final judgment in favor of appellees, declaring that the IRO
fee provisions are constitutional; declaring that if First Rio disputes the adequacy of payment for
health care provided under the workers' compensation act, it must first exhaust administrative
remedies and pursue judicial review in Travis County; enjoining First Rio from pursuing the suits
filed in Cameron County and filing new suits until after exhaustion of administrative remedies;
imposing $13,000 in sanctions on the law firm; and awarding attorney's fees to Texas Mutual, the
Commission, and Continental Casualty pursuant to their declaratory judgment actions. See Tex. Civ.
Prac. & Rem. Code Ann. § 37.009 (West 1997). The court entered an order granting the additional
$3,200 in attorney's fees sanctions on June 10, 2003.

 First Rio and its law firm subsequently requested findings of fact and conclusions of
law, which the court issued on July 17, 2003. Included in the findings were thirty-six stipulated
matters that the parties had filed with the court in May 2003 and sixteen additional oral stipulations
that had been read into the record at trial. We now turn to our analysis of appellants' issues,
beginning with First Rio's issues on appeal.


ANALYSIS

First Rio's Appeal

 Jurisdiction of the District Court

 In its first issue, First Rio contends that the Travis County district court was without
jurisdiction to issue an anti-suit injunction (i) to stay proceedings in suits pending in Cameron
County (ii) against First Rio and Dr. Howell, parties not domiciled in Travis County. First Rio
further contends that the district court was without jurisdiction to address appellees' counterclaims
because jurisdiction already had been established in Cameron County.

 Subject-matter jurisdiction is essential to the authority of a court to decide a case. 
Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). Whether a trial
court has subject-matter jurisdiction is a question of law that we review de novo. Mayhew v. Town
of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). When conducting a de novo review, the appellate
court exercises its own judgment and redetermines each legal issue, giving no deference to the trial
court's decision. Quick v. City of Austin, 7 S.W.3d 109, 116 (Tex. 1999) (op. on reh'g).

 At the outset, we reject First Rio's assertion that, because jurisdiction had already
been established in Cameron County, the Travis County district court was entirely without
jurisdiction to address appellees' counterclaims. In March 2002, First Rio filed--in Travis
County--its suit for declaratory relief against the Commission and Envoy Medical. Envoy filed its
answer in May 2002. The Commission filed its answer and counterclaims in June 2002. In late June
and early July, Texas Mutual, Continental Casualty, and the State Office of Risk Management filed
petitions in intervention. In the meantime, in May and June 2002, First Rio filed its suits in Cameron
County against several workers' compensation insurance carriers, including Texas Mutual and
Continental Casualty, seeking payment for medical bills that the carriers had either partially paid or
denied. First Rio itself established jurisdiction in Travis County before filing the suits in Cameron
County. We now turn to an examination of whether venue for the anti-suit injunction was mandatory
in Cameron County.

 First Rio asserts that venue is mandatory in Cameron County because the venue of
a proceeding for injunctive relief against a party "shall" be in the county in which the party is
domiciled or, to stay proceedings in a suit, "must" be tried in the court in which the suit is pending:


 (a) Except as provided by Subsection (b), a writ of injunction against a party who
is a resident of this state shall be tried in a district or county court in the county
in which the party is domiciled. If the writ is granted against more than one
party, it may be tried in the proper court of the county in which either party is
domiciled.



 A writ of injunction granted to stay proceedings in a suit or execution on a
judgment must be tried in the court in which the suit is pending or the judgment
was rendered.




Tex. Civ. Prac. & Rem. Code Ann. § 65.023 (West 1997). However, "the injunction venue statute
applies only to suits in which the relief sought is purely or primarily injunctive." In re Continental
Airlines, Inc., 988 S.W.2d 733, 736 (Tex. 1998) (orig. proceeding) (citing Ex parte Coffee, 328
S.W.2d 283, 287 (Tex. 1959)). When the pleadings demonstrate that the issuance of a permanent
injunction is the primary and principal relief sought in the lawsuit, venue is mandatory in the county
of the party against whom the injunction is sought. See Brown v. Gulf Television Co., 306 S.W.2d
706, 708 (Tex. 1957) (construing predecessor statute to section 65.023(a)). On the other hand, if a
review of the allegations and the prayer demonstrates that issuance of a permanent injunction would
be merely ancillary to a judgment awarding declaratory relief, the mandatory venue requirement does
not apply. See id. We must decide, then, whether the request for an anti-suit injunction was the
primary relief sought or ancillary to the request for declaratory relief.

 To be entitled to injunctive relief, a plaintiff must prove the existence of a wrongful
act, imminent harm, irreparable injury, and the absence of an adequate legal remedy. See Morris v.
Collins, 881 S.W.2d 138, 140 (Tex. App.--Houston [1st Dist.] 1994, writ denied). Fear or
apprehension of the possibility of injury is not sufficient; the plaintiff must prove that the defendant
has attempted or intends to harm the plaintiff in the future. See State v. Morales, 869 S.W.2d 941,
946-47 (Tex. 1994).

 In contrast, a declaratory judgment simply declares the rights, status, or other legal
relations of the parties. See Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a), (b) (West 1997) (trial
court has "power to declare rights, status, and other legal relations whether or not further relief is or
could be claimed," and declaration has the "force and effect of a final judgment or decree"). The
purpose of a declaratory judgment is to settle and to afford relief from uncertainty and insecurity with
respect to these rights, status, and other legal relations. See id. § 37.002(b) (West 1997).

 The law presumes that a defendant will recognize and respect the rights declared by
a declaratory judgment and will abide by the judgment in carrying out its duties. See Valley Oil Co.
v. City of Garland, 499 S.W.2d 333, 335-36 (Tex. Civ. App.--Dallas 1973, no writ). However,
ancillary injunctive relief may be obtained when the evidence shows that the defendant will not
comply with the judgment. See Texas Educ. Agency v. Leeper, 893 S.W.2d 432, 446 (Tex. 1994). 
The uniform declaratory judgments act authorizes a party to obtain supplemental ancillary relief,
including a permanent injunction, to enforce a declaratory judgment. See Tex. Civ. Prac. & Rem.
Code Ann. § 37.011 (West 1997) ("Further relief based on a declaratory judgment or decree may be
granted whenever necessary or proper. The application must be by petition to a court having
jurisdiction to grant the relief."); Valley Oil Co., 499 S.W.2d at 336 (holding that declaratory
judgment does not bar subsequent proceeding for coercive relief to enforce rights established by
judgment when losing party contravenes judgment).

 We must examine the petitions as a whole to determine whether the request for
injunctive relief was primary or ancillary to the request for declaratory relief. The petitions
demonstrate that the principal and primary relief sought is to establish by the court's decree the
constitutionality of the IRO fee rule and the requirement that First Rio, in its adequacy of payment
disputes, must exhaust administrative remedies before seeking relief in a court. The anti-suit
injunction is ancillary to the declaratory relief in that it seeks to protect and enforce the rights
established by the declaratory relief, that is, to bar First Rio from prosecuting the existing Cameron
County suits, or filing new suits, before exhausting administrative remedies. Because the request
for injunctive relief was filed as a counterclaim to First Rio's suit, venue in Travis County was
proper. "Venue of the main action shall establish venue of a counterclaim, cross claim, or third-party
claim properly joined under the Texas Rules of Civil Procedure or any applicable statute." Tex. Civ.
Prac. & Rem. Code Ann. § 15.062(a) (West 2002). Accordingly, we conclude appellees could assert
the anti-suit injunction in Travis County.

 Having determined that venue was proper in Travis County, we must still address
whether the Travis County district court had jurisdiction to issue an anti-suit injunction as to the suits
pending in Cameron County. The jurisdiction of district courts to issue injunctions arises from
article V, section 8 of the Texas Constitution, which provides that "District Court jurisdiction
consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies,
except in cases where exclusive, appellate, or original jurisdiction may be conferred by this
Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art.
V, § 8. "Subject to certain exceptions, state courts have authority to enjoin litigation in other state
courts, either of their own or other states." Ex parte Evans, 939 S.W.2d 142, 143 (Tex. 1997) (orig.
proceeding) (citing Golden Rule Ins. Co. v. Harper, 925 S.W.2d 649 (Tex. 1996)).

 "An anti-suit injunction is appropriate in four instances: 1) to address a threat to the
court's jurisdiction; 2) to prevent the evasion of important public policy; 3) to prevent a multiplicity
of suits; or 4) to protect a party from vexatious or harassing litigation." Golden Rule Ins. Co., 925
S.W.2d at 651 (citing Gannon v. Payne, 706 S.W.2d 304, 307 (Tex. 1986)). "A district court having
jurisdiction of the parties and the subject matter may enjoin a party from prosecuting a cause of
action in another court when such relief is necessary to prevent a multiplicity of suits, avoid
vexatious litigation, or prohibit the use of the judicial processes for purposes of harassment." 
University of Tex. v. Morris, 344 S.W.2d 426, 428 (Tex. 1961).

 Here, the Travis County district court found that it was necessary to enter permanent,
anti-suit injunctive relief "to prevent vexatious litigation by Robert S. Howell, D.C. and First Rio
Valley Medical, P.A. and the resulting disruption of the administrative process for workers'
compensation medical cost control." The injunction enjoins not the Cameron County justice courts
but instead enjoins First Rio and Dr. Howell--whom no one disputes were within the jurisdiction
of the Travis County district court--from prosecuting the suits already filed in Cameron County or
filing new adequacy-of-payment suits until first exhausting their administrative remedies. We thus
hold that it was within the jurisdiction of the Travis County district court to issue the anti-suit
injunction.

 First Rio further contends that the district court erred in finding that appellees'
counterclaims are compulsory. This finding occurred at the hearing on the temporary injunction, in
which the court, before holding that it had jurisdiction to issue temporary injunctive relief, stated that
"I do believe the counterclaim is a compulsory one. In any case, it is a proper counterclaim." 
Having found that appellees' counterclaims were within the district court's jurisdiction and that it
was within the district court's jurisdiction to issue the anti-suit injunction, we need not address this
point. We overrule First Rio's first issue.


 Whether First Rio and Howell are "Vexatious Litigants"

 In its eighth issue, First Rio contends that the district court erred in finding both First
Rio and Dr. Howell "vexatious litigants" under section 11.054 of the civil practice and remedies
code. This provision generally pertains to repeated litigation against a defendant or relitigation of
the same claims against a defendant after litigation has been finally determined against the plaintiff. 
See Tex. Civ. Prac. & Rem. Code Ann. § 11.054 (West 2002). The district court made no such
finding, nor did any party request relief under section 11.054. Instead, the district court found that
First Rio, Dr. Howell, and their attorneys filed the Cameron County suits "as part of a plan of
vexatious and harassing litigation," and that First Rio and Dr. Howell filed "groundless, multiple and
vexatious lawsuits." Furthermore, the district court's grant of the anti-suit injunction was based in
part on the prevention of vexatious litigation, see Golden Rule Ins., 925 S.W.2d at 651, not on any
finding that First Rio and Dr. Howell are "vexatious litigants." Because the district court did not
make the finding of which First Rio complains, we have nothing to review. We overrule First Rio's
eighth issue.


 Extent of Commission's Jurisdiction over Medical Payment Disputes

 In its second issue, First Rio contends that the district court erred in holding that First
Rio must exhaust administrative remedies in medical payment disputes before seeking relief in a
court. In its final judgment, the district court ordered, in pertinent part, that "[i]n each instance when
[First Rio] disputes the adequacy of payment under the Texas Workers' Compensation Act for health
care services provided, . . . [First Rio] . . . is required to exhaust administrative remedies." First Rio
asserts that the Commission has concurrent jurisdiction and therefore that health care providers may
bring such disputes either through the Commission's administrative process or in the courts. The
Commission, Texas Mutual, and Continental Casualty respond that the Commission has primary
jurisdiction, which favors initial resolution of disputes by administrative agencies. The State Office
of Risk Management takes the position that the Commission has exclusive jurisdiction, under which
an agency alone has the authority to make the initial determination in a dispute. Because the
statutory scheme demonstrates that the legislature has granted to the Commission the sole authority
to make an initial determination of a medical fee or medical necessity dispute, we hold that the
Commission has exclusive jurisdiction over these disputes. See Subaru of Am., Inc. v. David
McDavid Nissan, Inc., 84 S.W.3d 212, 221 (Tex. 2002) (op. on reh'g).

 We begin with a bedrock distinction between primary and exclusive jurisdiction: 
primary jurisdiction is prudential, whereas exclusive jurisdiction is jurisdictional. Id. at 220. 
Explaining the difference, the supreme court in Subaru observed:


The judicially-created primary jurisdiction doctrine operates to allocate power
between courts and agencies when both have authority to make initial determinations
in a dispute. Trial courts should allow an administrative agency to initially decide
an issue when: (1) an agency is typically staffed with experts trained in handling the
complex problems in the agency's purview; and (2) great benefit is derived from an
agency's uniformly interpreting its laws, rules, and regulations, whereas courts and
juries may reach different results under similar fact situations.


* * * *


Conversely, under the exclusive jurisdiction doctrine, the Legislature grants an
administrative agency the sole authority to make an initial determination in a dispute. 
An agency has exclusive jurisdiction "when a pervasive regulatory scheme indicates
that Congress intended for the regulatory process to be the exclusive means of
remedying the problem to which the regulation is addressed." Whether an agency
has exclusive jurisdiction depends on statutory interpretation.


Id. at 221 (citations omitted); see also Cash Am. Int'l, Inc. v. Bennett, 35 S.W.3d 12, 15-18 (Tex.
2000). For either exclusive or primary jurisdiction to apply, an agency must have the authority to
determine the controversy at issue. See Subaru, 84 S.W.3d at 221. If an agency has exclusive
jurisdiction, typically a party must exhaust all administrative remedies before seeking judicial review
of the agency's action. Id. (citing Cash Am., 35 S.W.3d at 15). When exhaustion is required, courts
have only limited review of the administrative action. Id.

 "Determining if an agency has exclusive jurisdiction requires statutory construction
and raises jurisdictional issues." Id. at 222. Whether an agency has exclusive jurisdiction is a
question of law that we review de novo. Id. (citing El Paso Natural Gas Co. v. Minco Oil & Gas,
Inc., 8 S.W.3d 309, 312 (Tex. 1999); Mayhew, 964 S.W.2d at 928). We now turn to our
determination of the extent of the Commission's jurisdiction over medical payment disputes,
beginning with some historical background concerning the Texas workers' compensation system.

 The workers' compensation system in Texas was created with the Employers'
Liability Act of 1913. Texas Workers' Comp. Comm'n v. Garcia, 893 S.W.2d 504, 510 (Tex. 1995). 
Under that system, a physician was required to present a claim for payment of a medical fee to the
Industrial Accident Board ("IAB") before seeking a remedy in court. Lumbermen's Reciprocal Ass'n
v. Wilmoth, 12 S.W.2d 972, 973 (Tex. Comm'n App. 1929, judgm't adopted as reformed in part and
reversed and dismissed in part) (quoting statute under old act (10) which stated that "[a]ll questions
arising under this law, if not settled by agreement of the parties interested therein and within the
provisions of this law, shall, except as otherwise provided, be determined by the board"). For an
employee found to have suffered a compensable injury, the rights and obligations of the employee
and the health care provider treating the employee were "governed entirely by the Workers'
Compensation Act." McCollum v. Baylor Univ. Med. Ctr., 697 S.W.2d 22, 25 (Tex. App.--Dallas
1985, no writ) (citing Smith v. Stephenson, 641 S.W.2d 900, 902 (Tex. 1982)).

 Our Court determined, under the IAB system, that "[f]or a district court to exercise
jurisdiction over a workers' compensation dispute, . . . the claim sued upon must first have been
presented to the Commission." Methodist Hosps. of Dallas v. Texas Workers' Comp. Comm'n, 874
S.W.2d 144, 149 (Tex. App.--Austin 1994, no writ) (op. on reh'g) (emphasis added) (citing Johnson
v. American Gen. Ins. Co., 464 S.W.2d 83, 84 (Tex. 1971)). "This jurisdictional requirement
specifically applies to the issue of whether a hospital bill is fair and reasonable." Id. (citing
Rodriguez v. American Gen. Fire & Cas. Co., 788 S.W.2d 583, 585 (Tex. App.--El Paso 1990, writ
denied)).

 In 1989, in response to sharply rising costs of claims and premiums, the legislature
enacted the new workers' compensation act ("the Act"), Garcia, 893 S.W.2d at 512-13, administered
by the Texas Workers' Compensation Commission. Tex. Lab. Code Ann. § 402.001 (West 1996). 
The Act "vests the power to award compensation benefits solely in the Workers' Compensation
Commission (formerly the Industrial Accident Board), subject to judicial review." American
Motorists Ins. Co. v. Fodge, 63 S.W.3d 801, 803 (Tex. 2001) (quoting Saenz v. Fidelity & Guar. Ins.
Underwriters, 925 S.W.2d 607, 612 (Tex. 1996)). The Act additionally "strengthens the
enforcement and adjudicatory powers of the Commission," Garcia, 893 S.W.2d at 514, including
a grant of authority to assess administrative penalties against a health care provider for administrative
violations. See Tex. Lab. Code Ann. § 415.003 (West 1996) (administrative violations as to health
care providers), § 415.021 (West Supp. 2004) (Commission power to assess administrative
penalties).

 The Act and accompanying rules dictate entitlement to medical care. An employee
"who sustains a compensable injury is entitled to all health care reasonably required by the nature
of the injury as and when needed." Id. § 408.021(a) (West 1996). "Except in an emergency, the
commission shall require an employee to receive medical treatment from a doctor chosen from a list
of doctors approved by the commission. A doctor may perform only those procedures that are within
the scope of the practice for which the doctor is licensed." Id. § 408.022(a) (West 1996).

 The Act and accompanying rules also speak in mandatory terms concerning the
procedure for payment of a medical bill and related disputes. When seeking payment from a
workers' compensation insurance carrier, a health care provider "shall" submit the medical bill to
the carrier. 28 Tex. Admin. Code § 134.801(a) (2004). "An insurance carrier shall pay the fee
allowed under Section 413.011 for a service rendered by a health care provider not later than the 45th
day after the date the insurance carrier receives the charge unless the amount of the payment or the
entitlement to payment is disputed." Tex. Lab. Code Ann. § 408.027(a) (West Supp. 2004).

 In the event of a dispute, the Commission "by rule shall establish: a program for . . .
review and resolution of a dispute regarding health care treatments and services." Id. § 413.013(1). 
If an insurance carrier "disputes the amount of payment or the health care provider's entitlement to
payment, the insurance carrier shall send to the commission, the health care provider, and the injured
employee a report that sufficiently explains the reasons for the reduction or denial of payment for
health care services provided to the employee. The insurance carrier is entitled to a hearing." Id.
§ 408.027(d). "A party, including a health care provider, is entitled to a review of a medical service
provided or for which authorization of payment is sought if a health care provider is: denied
payment or paid a reduced amount for the medical service rendered." Id. § 413.031(a)(1). The
review is conducted by the medical review division in the case of a medical fee dispute, 28 Tex.
Admin. Code § 133.307, and by an IRO in the case of a medical necessity dispute. Id. § 133.308. 
"In resolving disputes over the amount of payment . . ., the role of the commission is to adjudicate
the payment given the relevant statutory provisions and commission rules." Tex. Lab. Code Ann.
§ 413.031(c) (emphasis added).

 After review of either a medical fee or medical necessity dispute, the nonprevailing
party may request a contested case hearing before SOAH. Id. § 413.031(k); 28 Tex. Admin. Code
§ 133.307(p) (medical fee disputes), § 133.308(u) (medical necessity disputes). A party who has
exhausted its administrative remedies and is aggrieved by a final SOAH decision concerning a
medical fee or medical necessity dispute may seek judicial review of the decision in a Travis County
district court as governed by chapter 2001 of the government code. Tex. Lab. Code Ann.
§ 413.031(k); 28 Tex. Admin. Code § 133.307(p)(4) (medical fee disputes), § 133.308(u)(7)
(medical necessity disputes); see Tex. Gov't Code Ann. § 2001.176(b)(1) (requiring request for
judicial review to be filed in Travis County unless otherwise provided by statute). The supreme
court, in its Patient Advocates decision, contemplates that a party to a medical fee dispute must
exhaust administrative remedies before seeking review in a court:


[C]arriers do not make the final determination of the fees for disputed claims. If a
carrier and a provider disagree on the reimbursement amount, [the Commission], not
the carrier, makes the decision on the proper payment, subject to review. See Tex.
Lab. Code Ann. §§ 413.013(1), 413.031(a); 28 Tex. Admin. Code §§ 133.304(m),
(p), 133.305(b)(3)-(4). Any party that is not satisfied with the outcome may continue
the review process through SOAH and then the courts. Tex. Lab. Code Ann.
§ 413.031(d).


Patient Advocates of Tex. v. Texas Workers' Comp. Comm'n, 136 S.W.3d 643, 656-57 (Tex. 2004).

 The statutory scheme, and cases interpreting that scheme, demonstrate that the
Commission has the exclusive authority to adjudicate medical fee and medical necessity disputes
before a health care provider may seek relief in court. Pursuant to the Act vesting "the power to
award compensation benefits solely in the" Commission, Fodge, 63 S.W.3d at 803 (quoting Saenz,
925 S.W.2d at 612), the Commission has jurisdiction of disputes over reimbursement of medical
expenses. Id. at 803 & n.9 (citing Tex. Lab. Code Ann. § 413.031) ("Medical Dispute Resolution"). 

 Relying on Fodge, our sister court in Fort Worth determined that a health care
provider could not pursue tort claims against a workers' compensation insurance carrier arising from
denial of payment without first exhausting administrative remedies with the Commission. Bone v.
Utica Nat'l Ins. Co. of Tex., No. 02-02-00209-CV, 2003 Tex. App. LEXIS 6833, at *14 (Fort Worth
Aug. 7, 2003, pet. denied) (not designated for publication). The court held that because the doctors
"never pursued their administrative remedies as to that denial, and because the damage claims in the
amount of the charges for the medical services could not be adjudicated without also adjudicating
[the doctors'] entitlement to payment for the services, a matter solely within the [Commission's]
exclusive jurisdiction, the extra-contractual claims [against the carriers] were not within the trial
court's jurisdiction." Id. (citing Fodge, 63 S.W.3d at 804) (emphasis added); see also Bone v. Corvel
Corp., No. 02-02-00303-CV, 2003 Tex. App. LEXIS 5215, at *9 (Fort Worth June 19, 2003, pet.
denied) (not designated for publication) (holding that because physicians did not appeal denial of
medical payments with Commission, they "are not entitled to judicial review of their claims").

 Because the statutory scheme demonstrates that the legislature has granted to the
Commission the sole authority to make the initial determination in a medical fee or medical necessity
dispute, we hold that the Commission has exclusive jurisdiction over these disputes. See Subaru,
84 S.W.3d at 221. Accordingly, First Rio must first exhaust the administrative remedies provided
for within the Commission's regulatory scheme before seeking to resolve a medical fee or medical
necessity dispute in a court. We overrule First Rio's second issue.


 Denial of First Rio's Demand for a Jury Trial

 In its third issue, First Rio asserts that the district court erred in denying its demand
for a jury trial. We apply an abuse of discretion standard of review to a court's denial of a request
for a jury trial. Mercedes-Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996). We may
reverse a trial court under this standard only when we find that "the court acted in an unreasonable
or arbitrary manner," Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991), or "without
regard for any guiding rules or principles." Owens Corning Fiberglas Corp. v. Malone, 972 S.W.2d
35, 43 (Tex. 1998) (quoting City of Brownsville v. Alvarado, 897 S.W.2d 750, 754 (Tex. 1995)). 
The trial court does not abuse its discretion if some evidence reasonably supports its decision. 
Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g) (citing Davis v. Huey,
571 S.W.2d 859, 862 (Tex. 1978)).

 The Texas Constitution guarantees a jury trial. Tex. Const. I, § 15. However, the
right to a trial by jury is not absolute in civil cases. A party must comply with the procedure set forth
in rule of civil procedure 216: not less than thirty days before the date set for trial of the cause on
the non-jury docket, the party must file a written request for a jury and pay a jury fee. Tex. R. Civ.
P. 216; see Rhyne, 925 S.W.2d at 666. If the request is made more than thirty days before trial, it
is presumed timely requested. Halsell v. Dehoyos, 810 S.W.2d 371, 371 (Tex. 1991) (citing Wittie
v. Skees, 786 S.W.2d 464, 466 (Tex. App.--Houston [14th Dist.] 1990, writ denied)). To overcome
the presumption, the adverse party must show that "the granting of a jury trial would operate to
injure the adverse party, disrupt the court's docket, or impede the ordinary handling of the court's
business." Id. (citing Wittie, 786 S.W.2d at 466).

 As a preliminary matter, we address Texas Mutual's assertion that First Rio has
waived its challenges to the district court's findings of fact concerning the jury demand. First Rio
challenged the findings of fact only in its reply brief. The rules of appellate procedure do not allow
an appellant to include in a reply brief a new issue in response to some matter pointed out in the
appellee's brief but not raised by appellant's original brief. See Tex. R. App. P. 38.3; Barrios v.
State, 27 S.W.3d 313, 322 (Tex. App.--Houston [1st Dist.] 2000, pet. ref'd) ("Pointing out the
absence of an appellant's argument does not raise the argument or entitle appellant to assert that
argument for the first time in his reply brief. If the rule were construed otherwise, an appellee could
never point out matters not raised by an appellant for fear of reopening the door."). A party waives
its challenges to the findings of fact and conclusions of law if it fails to raise them in its original
appellate brief. See In re A.M., 101 S.W.3d 480, 486 (Tex. App.--Corpus Christi 2002, pet. filed);
Smith v. Hues, 540 S.W.2d 485, 489 (Tex. Civ. App.--Houston [14th Dist.] 1976, writ ref'd n.r.e.). 
Because First Rio did not raise its challenges to the findings of fact until its reply brief, the findings
of fact are binding on this Court and the parties, and are entitled to the same weight as a jury verdict,
unless the contrary is established as a matter of law or there is no evidence to support the findings. 
See McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986).

 Concerning the trial setting, on October 3, 2002, counsel for the Commission, after
conferring with other counsel, including counsel for First Rio, set the case for a non-jury trial on
December 10. On November 5, First Rio filed a jury demand and paid the jury fee. On December
3, Texas Mutual filed a motion to strike First Rio's jury demand, contending that the demand would
result in injury to other parties, disrupt the trial court's docket, and impede the ordinary handling of
the court's business. Texas Mutual further contended that there were no fact issues to be tried and
the jury demand was filed for the purpose of delay. On the day of trial, First Rio requested a
continuance because of Dr. Howell's health, which motion the district court denied. The court, after
hearing arguments, then granted Texas Mutual's motion to strike the jury demand.

 The district court found in its findings of fact that First Rio filed the jury demand
solely for the purpose of delay, initially making no attempt for a continuance or to reset the case for
a jury week. The court further found that First Rio did not comply with local rule 2.9, which states
that a request for a jury trial, after a non-jury setting of the case, "must be presented to a Judge upon
notice and hearing." Travis (Tex.) Civ. Dist. Ct. Loc. R. 2.9(c). The court found that the jury
demand "would have resulted in injury to the Commission and the other parties in this cause,"
harming IROs because some providers refused to pay IROs while this litigation was pending and
harming other parties in workers' compensation disputes because "they will be unable to secure a
prompt and fair resolution of their dispute as the legislature contemplated." Finally, the district court
expressly found that the jury demand would "disrupt the Court's docket and interfere with the
ordinary handling of the Court's business" and that First Rio had made no showing of disputed
issues of material fact.

 The evidence supports the district court's findings. The record demonstrates that First
Rio neither requested a continuance, nor a hearing on its demand for a jury trial, until the day of trial. 
The record also demonstrates that a jury trial setting would not be available until July 2003, which
the district court could reasonably conclude would have caused harm to the parties in the interim,
disrupted the court's docket, and interfered with the handling of the court's business. On the
question of whether there were fact issues to be tried, First Rio contended at the hearing on its jury
demand that there was a fact issue concerning a conspiracy among insurance carriers to "capture"
the Commission, "evidence that has to be adduced inferentially." But First Rio did not assert this
cause of action in its pleadings. Instead, its claims concerned the constitutionality and validity of
the IRO fee rule and a request for injunctive relief to file requests for IRO review without paying a
fee. The intervenors' counterclaims requested a declaration that First Rio is required to pursue
medical fee disputes according to the Commission's statutes and rules, and injunctive relief
enjoining First Rio from pursuing its litigation in Cameron County and filing further suits before
exhausting administrative remedies. All of these were issues of law for the court to decide.

 First Rio asserts nevertheless, relying on Citizens State Bank of Sealy v. Caney
Investments, that "parties to a hearing on a permanent injunction are entitled to a jury." 746 S.W.2d
477, 478 (Tex. 1988). Citizens State Bank of Sealy is distinguishable on its facts. There, the
opposing party did not contest the request for a jury demand and the trial court nevertheless denied
the timely demand. Id. Here, Texas Mutual filed a motion to strike the jury demand on the grounds
that "the granting of a jury trial would operate to injure the adverse party, disrupt the court's docket,
or impede the ordinary handling of the court's business." See Halsell, 810 S.W.2d at 371 (citing
Wittie, 786 S.W.2d at 466). The evidence supports the district court's findings on these grounds. 
Accordingly, we cannot say that the district court abused its discretion in denying First Rio's demand
for a jury trial. We overrule First Rio's third issue.


 Propriety of Declaratory Relief

 In its fifth issue, First Rio asserts that the district court erred in granting declaratory
relief because in doing so the court improperly rendered an advisory opinion. First Rio also contends
that the Commission lacked standing to request declaratory relief. The purpose of a declaratory
judgment is "to settle and to afford relief from uncertainty and insecurity with respect to rights,
status, and other legal relations; and it is to be liberally construed and administered." Tex. Civ. Prac.
& Rem. Code Ann. § 37.002(b). "A declaratory judgment is appropriate only if a justiciable
controversy exists as to the rights and status of the parties and the controversy will be resolved by
the declaration sought." Bonham State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995) (citing
Texas Ass'n of Bus., 852 S.W.2d at 446). Otherwise, the judgment amounts to no more than an
advisory opinion, which a court does not have the power to give. Lone Starr Multi Theatres, Inc.
v. State, 922 S.W.2d 295, 297 (Tex. App.--Austin 1996, no writ) (citing Southwest Airlines Co. v.
Texas High-Speed Rail Auth., 863 S.W.2d 123, 125 (Tex. App.--Austin 1993, writ denied)). An
"advisory opinion" decides an abstract question of law without binding the parties. Hays County v.
Hays County Water Planning P'ship, 106 S.W.3d 349, 358 (Tex. App.--Austin 2003, no pet.).

 The Commission, Texas Mutual, and Continental Casualty sought, in response to First
Rio's constitutional challenge of the IRO fee provision and its suits in Cameron County, declarations
that: the IRO fee provisions are constitutional; First Rio must exhaust administrative remedies
before seeking review of a dispute in a court; and the only circumstance in which First Rio may sue
for court-ordered payments of medical fees due under the workers' compensation act is after a final,
non-appealable administrative decision has been rendered in its favor and the carrier or other payor
has refused to pay. The district court granted the requests for declaratory relief in full.

 Unlike an advisory opinion, these declarations did not concern hypothetical claims
or abstract questions of law. The declarations went to the heart of the controversy between the
parties: whether the IRO fee provision is constitutional and whether First Rio is required to exhaust
administrative remedies before seeking relief in a court for payment of medical services to a
workers' compensation claimant. A trial court has the discretion to enter a declaratory judgment as
long as it will serve a useful purpose or will terminate the controversy between the parties. Beadle,
907 S.W.2d at 468. Because the controversy between the parties can be resolved by the declarations
sought, id. at 467, we cannot say that the district court erred in granting the declaratory relief.

 First Rio also contends that the Commission lacks standing to seek declaratory relief
because it is not a "person" under section 37.001 of the civil practice and remedies code. Under the
uniform declaratory judgments act ("UDJA"), a "person . . . whose rights, status, or other legal
relations are affected by a statute, municipal ordinance, contract, or franchise may have determined
any question of construction or validity arising under the . . . statute, ordinance, contract, or franchise
and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. &
Rem. Code Ann. § 37.004(a) (West 1997). "'[P]erson' means an individual, partnership, joint-stock
company, unincorporated association or society, or municipal or other corporation of any character." 
Id. § 37.001 (West 1997).

 First Rio cites us to no authority, and we find none, barring the Commission from
seeking declaratory relief as a counterclaimant. First Rio requested a declaration that the IRO fee
rule is unconstitutional and invalid; the Commission, as a counterclaimant, requested declarations
that the fee rule is constitutional and that First Rio, when seeking payment for medical services to
workers' compensation claimants, is required to exhaust administrative remedies before seeking
relief in a court. These counterclaims arose from First Rio's original action. Historically, although
standing was not at issue, courts have allowed the State and counties to assert declaratory judgment
actions. See, e.g., Duncan v. Pogue, 759 S.W.2d 435, 435 (Tex. 1988) (commissioners court as
counterclaimant); City of San Antonio v. Texas Att'y Gen., 851 S.W.2d 946, 947 (Tex. App.--Austin
1993, writ denied) (attorney general as counterclaimant); Falls County v. Perkins & Cullum, 798
S.W.2d 868, 869 (Tex. App.--Fort Worth 1990, no writ) (county as claimant); Feinman v. State, 717
S.W.2d 106, 107 (Tex. App--Houston [1st Dist.] 1986, writ ref'd n.r.e.) (State as counterclaimant). 
Given this precedent and that the UDJA is to be "liberally construed and administered," Tex. Civ.
Prac. & Rem. Code Ann. § 37.002(b), we hold that the Commission had standing to assert its
counterclaims for declaratory relief. We overrule First Rio's fifth issue.


 Propriety of Award of Attorney's Fees in the Declaratory Judgment Action

 In its fourth issue, First Rio asserts that the district court erred in awarding attorney's
fees under the UDJA because the request for declaratory relief parroted the request for injunctive
relief and sought no more than a declaration concerning the validity of a rule. First Rio further
asserts that the district court abused its discretion in awarding attorney's fees because the fees exceed
permissible rates for attorney's fees in Travis County.

 It is an abuse of discretion to award attorney's fees under the UDJA when the relief
sought is no greater than relief that otherwise exists by agreement or statute. See Strayhorn v.
Raytheon E-Systems, Inc., 101 S.W.3d 558, 572 (Tex. App.--Austin 2003, pet. denied); University
of Tex. v. Ables, 914 S.W.2d 712, 717 (Tex. App.--Austin 1996, no writ). "There is no basis for
declaratory relief when a party is seeking in the same action a different, enforceable remedy, and a
judicial declaration would add nothing to what would be implicit or express in a final judgment for
the enforceable remedy." Universal Printing Co. v. Premier Victorian Homes, Inc., 73 S.W.3d 283,
296 (Tex. App.--Houston [1st Dist.] 2001, pet. denied). It is an abuse of discretion, therefore, to
award attorney's fees under the UDJA when the statute is relied upon solely as a vehicle to recover
attorney's fees. Raytheon E-Systems, 101 S.W.3d at 572.

 The Commission, Texas Mutual, and Continental Casualty sought declarations that:
the IRO fee provisions are constitutional; First Rio is required to exhaust administrative remedies
before seeking review of a dispute in a court; and that the only circumstance in which First Rio may
sue for court-ordered payments of medical fees due under the workers' compensation act is after a
final, non-appealable administrative decision in favor of First Rio has been rendered and the carrier
or other payor has refused to pay. The request for injunctive relief sought an injunction barring First
Rio from pursuing the Cameron County lawsuits that it had already filed or filing new suits for
medical payments until it had obtained a final, non-appealable decision in its favor and the payor had
refused to pay. Whereas the declaratory relief pertains to the constitutionality of the IRO fee
provisions and exhaustion of administrative remedies before the Commission, the injunctive relief
pertains to First Rio's pending and prospective suits. If appellees had prevailed on their request for
injunctive relief but not the declaratory relief, the relief would not be the same. Accordingly, the
declaratory relief does not parrot the injunctive relief.

 First Rio further asserts that it was an abuse of discretion to award attorney's fees
under the UDJA because appellees requested no more than a declaration concerning the validity of
a rule. Appellees sought declaratory relief in part based on section 2001.038 of the administrative
procedure act ("APA"), which allows a court to render a declaratory judgment concerning the
validity or application of a rule. Tex. Gov't Code Ann. § 2001.038 (West 2000). When a party
"files a proceeding that only challenges the validity of an administrative rule, the parties are bound
by the APA and may not seek relief under the UDJA because such relief would be redundant." 
Texas State Bd. of Plumbing Exam'rs v. Associated Plumbing-Heating-Cooling Contractors of Tex.,
Inc., 31 S.W.3d 750, 753 (Tex. App.--Austin 2000, pet. dism'd by agr.) (emphasis added). Here,
the declaratory relief sought more than a declaration concerning the validity of a rule: it sought a
declaration concerning exhaustion of administrative remedies in medical payment disputes. 
Accordingly, appellees were entitled to seek attorney's fees under the UDJA.

 First Rio further asserts that the district court abused its discretion by awarding
unreasonable attorney's fees that exceed the permissible rate for attorney's fees in Travis County. 
First Rio contends that the permissible rate is $200 per hour, because that is the rate at which the
district court awarded its sua sponte attorney's fees sanction. The district court's authority to award
attorney's fees under the UDJA does not equate with its authority to award sanctions. In "any
proceeding" under the UDJA, "the court may award costs and reasonable and necessary attorney's
fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009. The UDJA "entrusts
attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees
awarded be reasonable and necessary, which are matters of fact, and to the additional requirements
that fees be equitable and just, which are matters of law." Bocquet v. Herring, 972 S.W.2d 19, 21
(Tex. 1998). In reviewing a fee award under the UDJA, we must determine whether the trial court
abused its discretion by awarding fees when there was insufficient evidence that the fees were
reasonable and necessary, or when the award was inequitable or unjust. Id.

 At the conclusion of the trial on the merits, attorneys for the appellees presented
extensive testimony and exhibits as to the reasonableness and necessity of their fees, including their
time spent on the case, their usual and customary rates, the difficulty of the issues, and their
expertise. The district court awarded to Texas Mutual, Continental Casualty, and the Commission 
part, but not all, of the fees requested. On the record before us, we cannot say that the district court
abused its discretion in awarding attorney's fees pursuant to appellees' declaratory judgment actions. 
We overrule First Rio's fourth issue.


 Judgment Against Dr. Howell, Individually

 In its sixth issue, First Rio asserts that the district court erred in awarding
counterclaim relief against Dr. Howell, individually, because he is not a proper party to the
counterclaims. First Rio raises this issue on the ground that Dr. Howell was not a party in any of the
Cameron County suits. The evidence supports the district court's finding that "Howell filed this
lawsuit; he is . . . estopped from challenging his own status as a proper party to the lawsuit he
instituted." In any event, First Rio fails to cite any authority or direct us to any part of the appellate
record in support of its argument. See Tex. R. App. P. 38.1(h) ("The brief must contain a clear and
concise argument for the contentions made, with appropriate citations to authorities and to the
record."). Having presented nothing for our review, First Rio has waived this argument. We
overrule First Rio's sixth issue.


 Constitutionality of District Court's Rulings and IRO Fee Rules

 In its seventh and ninth issues, First Rio contends that the district court's (i) issuance
of a permanent injunction violated the right to contract; (ii) declaration that the IRO fee rules are
constitutional violates the open courts provision of the Texas Constitution; (iii) declaration that First
Rio must exhaust administrative remedies before seeking resolution of a medical payment dispute
in a court is unconstitutional for all disputes under $200; and (iv) variance between its oral ruling
and final judgment denies First Rio due process of law.

 First Rio begins with the contention that by enjoining First Rio's and Dr. Howell's
"assigns," the permanent injunction impairs First Rio's right to contract. See Tex. Const. art. I, § 16
(stating that "[n]o bill of attainder, ex post facto law, retroactive law, or any law impairing the
obligation of contracts, shall be made"). We disagree. This constitutional provision applies to
"laws," which do not include decisions of a court: "a decision of a court is not a law, within the
provisions of the Constitution relating to impairment of contracts." Amalgamated Transit Union,
Local Div. 1338 v. Dallas Pub. Transit Bd., 430 S.W.2d 107, 119 (Tex. Civ. App.--Dallas 1968,
writ ref'd n.r.e.) (citing Storrie v. Cortes, 38 S.W. 154, 156 (Tex. 1896) (discussing United States
Constitution)).

 First Rio next asserts that the district court erred in declaring that the IRO fee rules
are constitutional because the fees are an unreasonable financial barrier to the courts, in violation of 
the open courts provision of the Texas Constitution. Article I, section 13 of the Texas Constitution
provides in part that "[a]ll courts shall be open, and every person for an injury done him, in his lands,
goods, person or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13. The
open courts provision includes at least three separate guarantees: "(1) courts must actually be
operating and available; (2) the Legislature cannot impede access to the courts through unreasonable
financial barriers; and (3) meaningful remedies must be afforded, 'so that the legislature may not
abrogate the right to assert a well-established common law cause of action unless the reason for its
action outweighs the litigants' constitutional right of redress.'" Garcia, 893 S.W.2d at 520 (quoting
Trinity River Auth. v. URS Consultants, Inc., 889 S.W.2d 259, 261 (Tex. 1994)). Pursuant to this
provision, Texas citizens asserting common-law causes of action may not be unreasonably denied
access to the courts. Sax v. Votteler, 648 S.W.2d 661, 664 (Tex. 1983).

 A claim of unconstitutionality under the open courts provision will succeed if the
claimant (1) has a cognizable common-law cause of action being restricted by a statute, and (2) the
restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. 
Rose v. Doctors Hosp., 801 S.W.2d 841, 843 (Tex. 1990); Sax, 648 S.W.2d at 666. In applying this
test, we consider both the statute's general purpose and the extent to which the claimant's right to
bring a common-law cause of action is affected. Sax, 648 S.W.2d at 666.

 Assuming without deciding that First Rio has a cognizable common-law cause of
action for judicial review of a workers' compensation medical payment dispute, we will examine
whether the fee is an unreasonable or arbitrary restriction when balanced against the purpose and
basis of the statute. Rose, 801 S.W.2d at 843. In 2001, the legislature amended the labor code to
provide that IROs would perform medical necessity reviews. (11) The fee for review by a medical
doctor is a "tier one" fee, $650, and the review by other health care providers, including
chiropractors, is a "tier two" fee, $460. 28 Tex. Admin. Code §§ 12.403, 133.308(r)(6). For support
of its assertion that these fees impair its access to the courts, First Rio relies on LeCroy v. Hanlon,
in which the supreme court held that although "[f]iling fees and court costs are usually
constitutional," a filing fee that goes to state general revenues is an "unreasonable imposition[] on
the state constitutional right of access to the courts." 713 S.W.2d 335, 342 (Tex. 1986).

 Here, the parties stipulated that participation within the workers' compensation
system is voluntary. They further stipulated that the "IRO rule sets fees for the IRO's services. The
applicable fee is paid to the IRO, not to the Treasury of the State or to the [Commission]." A
representative for Envoy testified that the fee pays for the IRO's services and administrative
expenses in handling the medical necessity reviews. Additionally, the parties stipulated that if the
health care provider prevails in the IRO process, Commission rules provide that the Commission will
order the carrier to reimburse the fee to the health care provider. 28 Tex. Admin. Code
§ 133.308(r)(2). We do not find that the fee is an unreasonable or arbitrary restriction when balanced
against the purpose and basis of the statute, Rose, 801 S.W.2d at 843, nor does the fee impermissibly
go to state general revenues. LeCroy, 713 S.W.2d at 342. Accordingly, we hold that the fee
provisions do not violate the open courts provision of the Texas Constitution. Further, the
Commission's rules allow for access to the courts after exhausting administrative review of a
medical necessity dispute. 28 Tex. Admin. Code § 133.308(u)(7).

 First Rio nevertheless contends that the restriction of judicial review of Commission
decisions to Travis County impermissibly limits First Rio's access to the courts. Because First Rio
did not assert this issue below, it has not preserved it for our review. See, e.g., Dreyer v. Greene,
871 S.W.2d 697, 698 (Tex. 1993) (applying preservation-of-error requirement to constitutional
challenge).

 First Rio next asserts that the court's declaration that First Rio must exhaust
administrative remedies before seeking resolution of a medical fee dispute in a court is
unconstitutional for all disputes under $200. First Rio's ground for this argument is that justice of
the peace courts have "exclusive jurisdiction in civil matters where the amount in controversy is two
hundred dollars or less." Tex. Const. art. V, § 19. Having determined that the Commission has
exclusive jurisdiction over medical fee and medical necessity disputes, we do not find any
constitutional violation in this declaration.

 First Rio's final constitutional claim is that a variance between the district court's oral
and written rulings violates its due process rights. It does not. First Rio asserts that the district court
orally denied appellees' requests for declaratory relief then granted the relief in the final judgment. 
The record demonstrates that the district court orally denied declaratory relief "that really is an
injunction in the form of a declaration." First Rio further asserts that the district court admitted
stipulations after the evidence was closed at the trial. The record demonstrates, however, that the
parties entered the stipulations of which First Rio complains into the record during the trial. Having
found no constitutional violations, we overrule First Rio's seventh and ninth issues.


The Law Firm's Appeal

 In their appeal, the law firm asserts that the district court abused its discretion by
twice imposing sanctions upon it: first imposing $13,000 in attorney's fees pursuant to Texas
Mutual's motion for sanctions and second sua sponte imposing $3,200 in sanctions after no
representative of the law firm appeared at the hearing on the motion for final judgment. It further
asserts that Texas Mutual waived its right to complain of pretrial conduct by failing to obtain a
sanctions hearing before trial. Finding waiver as to one ground and error as to another, we
nevertheless find that some evidence supports the other five grounds for imposition of sanctions
pursuant to Texas Mutual's motion. We thus remand the issue for recalculation of sanctions in
accordance with this opinion. As to the $3,200 in sanctions, although the district court did not afford
the law firm an opportunity for notice and hearing, the law firm waived its complaint by not
affording the district court an opportunity to correct its error.


 Waiver

 The law firm complains at the outset, as to the sanctions pursuant to Texas Mutual's
motion, that Texas Mutual waived its right to complain of pretrial conduct by failing to obtain a
sanctions hearing before trial. Generally, a party who fails to obtain a pretrial ruling on a discovery
dispute that exists before trial waives any claim for sanctions based on that conduct. Remington
Arms Co. v. Caldwell, 850 S.W.2d 167, 170 (Tex. 1993) (orig. proceeding). Here, Texas Mutual
filed a motion to compel but did not obtain pretrial rulings on its discovery disputes. The evidence
demonstrates that Texas Mutual was aware of the alleged discovery abuses before trial. We thus
hold that Texas Mutual, by failing to obtain pretrial rulings, waived its objections to alleged conduct
of which it was aware before trial. However, in addition to awarding sanctions based on rule of civil
procedure 215, allowing sanctions for abuse of discovery, the district court also based its sanctions
on rule of civil procedure 13 and its inherent authority. We must determine, then, whether the
allegedly sanctionable conduct other than discovery abuse supports the imposition of sanctions.


 Sanctions upon Texas Mutual's Motion

 The law firm urges that the imposition of $13,000 in sanctions constituted an abuse
of discretion. The decision to impose a sanction is left to the discretion of the trial court and will be
set aside only upon a showing of a clear abuse of discretion. Koslow's v. Mackie, 796 S.W.2d 700,
704 (Tex. 1990). In addition to the imposition of sanctions for pretrial discovery abuses, the court
imposed sanctions under rule of civil procedure 13 and its inherent authority. Under rule 13, an
attorney's signature on a pleading constitutes a certificate that the pleading "is not groundless and
brought in bad faith or groundless and brought for the purpose of harassment." Tex. R. Civ. P. 13. 
"If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or
upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under
Rule 215-2b, upon the person who signed it, a represented party, or both." Id. Courts may, under
rule 13, "impose sanctions against parties filing frivolous claims to deter similar conduct in the
future and to compensate the aggrieved party by reimbursing the costs incurred in responding to
baseless pleadings." Scott & White Mem'l Hosp. v. Schexnider, 940 S.W.2d 594, 596-97 (Tex.
1996).

 Even in the absence of an applicable rule or statute, a court has the inherent authority
to sanction parties for bad-faith abuses if it finds that to do so will "aid in the exercise of its
jurisdiction, in the administration of justice, and in the preservation of its independence and
integrity." In re Bennett, 960 S.W.2d 35, 40 (Tex. 1997) (quoting Eichelberger v. Eichelberger, 582
S.W.2d 395, 398 (Tex. 1979)). This inherent power to sanction exists only to the extent necessary
to deter, alleviate, and counteract bad-faith abuse of the judicial process. Onwuteaka v. Gill, 908
S.W.2d 276, 280 (Tex. App.--Houston [1st Dist.] 1995, no writ). A court cannot invoke its inherent
power to sanction without some evidence and factual findings that the conduct complained of
significantly interfered with the court's legitimate exercise of one of its traditional core functions. 
Kennedy v. Kennedy, 125 S.W.3d 14, 19 (Tex. App.--Austin 2002, pet. denied).

 In addition to the sanctions for the alleged discovery abuses, the court imposed
sanctions on six grounds, finding that the law firm: (i) obtained an ex parte TRO for the purpose of
delaying trial, constituting a bad-faith abuse of the judicial process; (ii) obtained the signatures of
forty-three chiropractors on identical affidavits without complying with their obligations under rule
of civil procedure 13 to investigate whether the doctors could in good faith execute the affidavits;
(iii) "designed and carried out a vexatious litigation campaign by filing over 700 lawsuits in less than
two months"; (iv) made false statements of material fact to the district court concerning their
involvement in the filing of the lawsuits; (v) filed a motion to strike Texas Mutual's counsel in
violation of rule of civil procedure 13; and (vi) filed a "patently frivolous" petition for writ of
mandamus in this Court while simultaneously appealing the same ruling. We will address each of
these grounds in turn.

 Concerning the ex parte TRO, the district court found that "[r]espondents' conduct
in obtaining the . . . TRO to restrain the pursuit or prosecution of this lawsuit, on behalf of a non-party who facially lacked any standing for such relief, constituted a bad faith abuse of the judicial
process." The court imposed sanctions under its inherent authority based on violation of Cameron
County local rule 1.3 because the respondents were aware of the identities of counsel for Texas
Mutual before obtaining the TRO. See Cameron (Tex.) Civ. Dist. Ct. Loc. R. 1.3(B) (stating that
counsel must certify in writing to court that "to the best of his knowledge the party against whom
the relief is sought is not represented by counsel in the matter made the basis of the suit in which the
relief is sought," that opposing party's counsel has been notified and does not wish to appear, or that
counsel has "diligently attempted to notify such counsel and has been unable to do so"). The court
further imposed sanctions under its inherent authority for violating rule of civil procedure 680, which
states that "[n]o temporary restraining order shall be granted without notice to the adverse party"
unless specific facts demonstrate that irreparable damage will result before notice and hearing.

 The law firm does not dispute that it played a part in obtaining the TRO, nor does it
dispute that it obtained the TRO without first notifying counsel for Texas Mutual. It instead asserts,
without citing to authority, that the district court was without jurisdiction to impose sanctions against
it for actions in another court. We disagree. A trial court has the inherent power to take action that
will "aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation
of its independence and integrity." Eichelberger, 582 S.W.2d at 398. This inherent power to
sanction exists only to the extent necessary to deter, alleviate, and counteract bad-faith abuse of the
judicial process. Gill, 908 S.W.2d at 280.

 The evidence supports the court's imposition of sanctions on this ground. The
application for the TRO listed Texas Mutual's attorney of record to be served with process, then
stated that "[i]t is believed that notice prior to the issuance of the temporary restraining order will
result in additional and unnecessary duplicitous litigation." This fails to comply with either the
Cameron County local rule or rule of civil procedure 680. Further, it demonstrates that the law firm
was aware before obtaining the TRO that Texas Mutual was represented by counsel. Accordingly,
some evidence supports the district court's finding that obtaining the ex parte TRO constituted a bad-faith abuse of the judicial process.

 As to the sanctions under rule of civil procedure 13 for failing to investigate whether
the forty-three chiropractors could in good faith sign their affidavits, "[b]y its express language, Rule
13 applies only to pleadings, motions and other papers signed by attorneys." GTE Communications
Sys. Corp. v. Tanner, 856 S.W.2d 725, 730 (Tex. 1996) (orig. proceeding). Because the
chiropractors' affidavits were not signed by the attorneys, it was an abuse of discretion for the district
court to base an imposition of sanctions under rule 13 on this ground. Id.

 The court next found that the law firm "designed and carried out a vexatious litigation
campaign by filing over 700 lawsuits in less than two months." We have already determined that
it was within the district court's jurisdiction to issue an anti-suit injunction to prevent, among other
things, vexatious litigation. The law firm, on behalf of First Rio, filed the declaratory action in this
case challenging the constitutionality of the IRO fee provisions. Accordingly, it cannot deny that
it was aware of the Commission's administrative review process for medical payment disputes. The
parties stipulated that in May and June 2002, First Rio filed 723 suits in Cameron County justice
courts. The law firm does not dispute that it drafted the petitions for the lawsuits. The record
demonstrates that some of these lawsuits were factually groundless, filed after final, non-appealable
orders denying payment to First Rio. Some of the other suits concerned claims that had already been
settled. On the record before us, we cannot say that the district court abused its discretion in
determining that the law firm "designed and carried out a vexatious litigation campaign."

 We next review the determination that at the sanctions hearing, the law firm "made
false statements of material fact to the Court, suggesting that [it] had little or no involvement in the
filing of the lawsuits" in Cameron County. The court found that the law firm's conduct violated
rules 3.03(a)(1) and (5) of the Texas Disciplinary Rules of Professional Conduct, which address duty
of candor toward a tribunal. See Tex. Disciplinary R. Prof'l Conduct 3.03, reprinted in Tex. Gov't
Code Ann., tit. 2, subtit. G app. A (West 1998).

 In its response to Texas Mutual's motion for sanctions, the law firm stated that it had
drafted the lawsuits but "[i]n disregard of counsel's instructions First Rio Valley filed all of the suits
(on information and belief) during the period that counsel was out on medical leave." The response
went on to state that the first notice the law firm had that the suits had been filed was the notice of
the July 2002 TRO hearing. At the sanctions hearing, Maxwell stated that the vast majority of the
suits were filed while he was out for back surgery. He further stated: "I don't think those contain
my own personal signature on it. I think they were stamped." Soon after the sanctions hearing, but
before the court issued the sanctions order, Maxwell stated in a letter to the court that it was not his
"intent to infer that his signatures were stamped by persons outside his office" and that the lawsuits
"were either signed by myself, stamp-signed by this office or signed by other counsel in Cameron
County." Despite Maxwell's ameliorative letter, on the record before us, we cannot say that the
district court abused its discretion in determining that counsel made false statements of material fact
to the court.

 We next review the district court's determination that the law firm filed a motion to
disqualify Texas Mutual's counsel in violation of rule of civil procedure 13. Specifically, the court
found that the motion was filed as a tactical weapon only, was groundless and without basis in law
or fact, was brought in bad faith, and was brought for delay or harassment purposes only. Rule 3.08
of the Texas Disciplinary Rules of Professional Conduct sets forth rules concerning the lawyer as
a witness in a client's case. Tex. Disciplinary R. Prof'l Conduct 3.08, reprinted in Tex. Gov't Code
Ann., tit. 2, subtit. G app. A (West 1998). A comment to the rule states that although the rule "may
furnish some guidance in those procedural disqualification disputes where the party seeking
disqualification can demonstrate actual prejudice to itself resulting from the opposing lawyer's
service in the dual roles," id. cmt. 10, the rule "should not be used as a tactical weapon to deprive
the opposing party of the right to be represented by the lawyer of his or her choice." Id.

 In July 2002, the law firm called counsel for Texas Mutual as a witness at the
temporary injunction hearing. In October 2002, two months before trial, the law firm filed a motion
to disqualify Texas Mutual's counsel and his law firm on the ground that his testimony at the trial
on the merits would be "adverse to the pled claims of Texas Mutual." The motion further stated that
the counsel and his firm have not "met the requisite standards for their continuance in the
representation of Texas Mutual Insurance Company." We note that the law firm did not set a hearing
on the motion. On the record before us, we cannot say that the district court abused its discretion
in finding that the law firm filed the motion to disqualify in violation of rule of civil procedure 13. 
See In re Nitla S.A. de C.V., 92 S.W.3d 419, 422 (Tex. 2002) ("In considering a motion to disqualify,
the trial court must strictly adhere to an exacting standard to discourage a party from using the
motion as a dilatory trial tactic.").

 We next review the district court's determination that the law firm filed a "patently
frivolous" petition for writ of mandamus in this Court while simultaneously appealing the same
ruling. "Mandamus is an extraordinary remedy available only in limited circumstances to correct
a clear abuse of discretion or the violation of a duty imposed by law when the relator has no adequate
remedy by appeal." In re Crow-Billingsley Air Park, Ltd., 98 S.W.3d 178, 179 (Tex. 2003) (citing
Republican Party of Tex. v. Dietz, 940 S.W.2d 86, 88 (Tex. 1997); Walker v. Packer, 827 S.W.2d
833, 839-44 (Tex. 1992)). This Court denied the petition for writ of mandamus on the ground that
a party challenging a temporary injunction has an adequate remedy by accelerated, interlocutory
appeal. In re Howell, No. 03-02-00490-CV (Tex. App.--Austin Aug. 14, 2002) (orig. proceeding)
(not designated for publication). On the record before us, we cannot say that the district court abused
its discretion in determining that the law firm filed a "patently frivolous" petition for writ of
mandamus.

 Concerning the amount of the sanctions award, Texas Mutual sought $23,000 in
attorney's fees sanctions; the court awarded $13,000. Because we affirm the grounds for the award
only in part, we remand the issue for recalculation of attorney's fees sanctions in accordance with
this opinion. The law firm further asserts that "[a]s further sanction, without notice or hearing, the
judge erred in awarding interest on the sanctions in the final judgment." Having presented no
citations to authorities or the record, it has not preserved this issue for our review. See Tex. R. App.
P. 38.1(h). 


 Sua Sponte Sanctions

 A trial court has inherent power to impose sanctions on its own motion. Bennett, 960
S.W.2d at 40. We review the trial court's decision under an abuse of discretion standard. Koslow's,
796 S.W.2d at 704. In exercising its discretion in ordering sanctions, a trial court is limited by the
Due Process Clause of the United States Constitution. Bennett, 960 S.W.2d at 40. When an attorney
fails to complain of the sanction and fails to ask the trial court to reconsider its actions, however, the
attorney waives any complaint about the trial court's action. See Tex. R. App. P. 33.1(a)(1) (stating
that to preserve error for appeal, party must make timely and sufficiently specific objection in trial
court); Kiefer v. Continental Airlines, Inc., 10 S.W.3d 34, 41 (Tex. App.--Houston [14th Dist.]
1999, pet. denied) (finding sanctioned firm waived complaint by not objecting at trial court level).

 The record does not demonstrate that the law firm contested the sua sponte sanctions
or asked the court to reconsider its action. Thus, the district court had no opportunity to correct any
error it may have perceived. See Valdez v. Valdez, 930 S.W.2d 725, 728 (Tex. App.--Houston [1st
Dist.] 1996, no writ) (finding waiver because attorney never gave trial court opportunity to correct
alleged error of imposing sanctions without notice). Because the law firm failed to preserve its
complaint for appellate review as to the $3,200 in sanctions, we affirm the district court's imposition
of these sanctions. Having affirmed only in part the sanctions upon Texas Mutual's motion, we
reverse this award for recalculation in accordance with this opinion. We otherwise overrule the law
firm's issues on appeal and decline to grant the law firm's request for attorney's fees in bringing its
appeal.


CONCLUSION

 As to First Rio's challenge to the district court's jurisdiction, we reject First Rio's
assertion that, because jurisdiction had already been established in Cameron County, the Travis
County district court was entirely without jurisdiction to address appellees' counterclaims. First Rio
itself established jurisdiction in Travis County before filing the suits in Cameron County. Because
the counterclaimants' request for injunctive relief was ancillary to its request for declaratory relief,
the mandatory venue requirements of section 65.023 of the civil practice and remedies code do not
apply. See Continental Airlines, 988 S.W.2d at 736. Finally, we hold that it was within the court's
jurisdiction to issue an anti-suit injunction as to First Rio's suits in Cameron County and prospective
suits filed before exhausting administrative remedies. Because the anti-suit injunction pertained to
vexatious litigation, not "vexatious litigants," First Rio's challenge to a finding that it and Dr.
Howell are "vexatious litigants" is not before us for review.

 Concerning exhaustion of administrative remedies, because the statutory scheme
demonstrates that the legislature has granted to the Commission the sole authority to make an initial
determination of a medical fee or medical necessity dispute, we hold that the Commission has
exclusive jurisdiction over these disputes. See Subaru, 84 S.W.3d at 221. Thus, First Rio is required
to exhaust administrative remedies before seeking court review of these disputes.

 As to First Rio's request for a jury trial, the record demonstrates that the "granting
of a jury trial would operate to injure the adverse party, disrupt the court's docket, or impede the
ordinary handling of the court's business," Halsell, 810 S.W.2d at 371, and that only issues of law
were before the court. Therefore, we cannot say that the district court abused its discretion in
denying First Rio's demand for a jury trial. We further find that First Rio has waived its argument
as to the propriety of the judgment against Dr. Howell individually.

 Concerning the district court's issuance of declaratory relief, because the controversy
between the parties can be resolved by the declarations sought, Beadle, 907 S.W.2d at 467, we hold
that the district court did not issue an impermissible advisory opinion in granting the declaratory
relief. Further, given the precedent for the State and counties to assert declaratory actions and that
the UDJA is to be "liberally construed and administered," Tex. Civ. Prac. & Rem. Code Ann.
§ 37.002(b), we hold that the Commission had standing to assert its counterclaims for declaratory
relief. Because the declaratory relief does not parrot the injunctive relief and seeks more than a
declaration concerning the validity of a rule, Texas Mutual, Continental Casualty, and the
Commission were entitled to seek attorney's fees under the UDJA. We cannot say that the district
court abused its discretion in awarding fees to these appellees pursuant to their requests for
declaratory relief.

 As to First Rio's challenges on constitutional grounds, we do not find that the district
court's issuance of a permanent injunction against First Rio's "assigns" impairs appellants' right to
contract. The constitutional provision applies to "laws," which do not include decisions of a court. 
We do not find that the IRO fee is an unreasonable or arbitrary restriction when balanced against the
purpose and basis of the statute, Rose, 801 S.W.2d at 843, and thus hold that the fee provisions do
not violate the open courts provision of the Texas Constitution. Having determined that the
Commission has exclusive jurisdiction over medical fee and medical necessity disputes, we find that
this requirement is not unconstitutional as to disputes under $200. Finally, we do not find any 
violation of First Rio's due process rights in the form of a variance between the district court's oral
and written rulings.

 Concerning the law firm's appeal, because we find that some evidence supports the
imposition of sanctions on five of the seven grounds asserted in Texas Mutual's motion for
sanctions, we cannot say that the district court abused its discretion in imposing these sanctions on
the law firm. However, having affirmed the sanctions upon Texas Mutual's motion only in part, we
remand the issue for recalculation of attorney's fees sanctions in accordance with this opinion. As
to the $3,200 award, although the district court did not afford the law firm an opportunity for notice
and hearing before imposing those sanctions, the law firm failed to preserve error by not affording
the district court an opportunity to correct its mistake.

 Because only the Commission and the State Office of Risk Management sought
permanent injunctive relief, and pursuant to Continental Casualty's request, we reform the judgment
to delete the reference to Continental Casualty as one of the parties seeking a permanent injunction. 
We affirm the judgment of the district court in all other respects.



 

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Reversed and Remanded in Part; Reformed and, as Reformed, Affirmed in Part

Filed: August 12, 2004

1. The district court also awarded attorney's fees to other entities who are not parties to this
appeal.
2. Unless an amendment of a provision made after this suit arose affects our analysis, or
unless citation to historical provisions is necessary, for convenience we will refer to the current
statutory and administrative provisions.
3. Act of May 25, 2001, 77th Leg., R.S., ch. 1456, § 6.04, 2001 Tex. Gen. Laws 5167, 5186
(codified at Tex. Lab. Code Ann. § 413.031(e) (West Supp. 2004)).
4. Act of May 8, 1997, 75th Leg., R.S., ch. 163, § 8, 1997 Tex. Gen. Laws 317, 322-24
(codified at Tex. Ins. Code Ann. art. 21.58C (West Supp. 2004)); see also Envoy Med. Sys. v. State,
108 S.W.3d 333, 335 (Tex. App.--Austin 2003, no pet.) (describing creation of IROs).
5. The Commission may charge a fee for review of a medical fee dispute by the medical
review division, but no fee is stated in the rules. 28 Tex. Admin. Code § 133.307(o) (2004); see Tex.
Lab. Code Ann. § 413.020 (West 1996) (giving Commission general authority to charge fees for
review of "health care treatment, fees, or charges").
6. See Patient Advocates of Tex. v. Texas Workers' Comp. Comm'n, 80 S.W.3d 66, 81 (Tex.
App.--Austin 2002), aff'd in part and rev'd in part, 136 S.W.3d 643, 657 (Tex. 2004) ("[W]e
cannot say that a private insurance carrier's act of reviewing medical bills and determining a
reimbursement amount when no [maximum allowable reimbursement] has been established falls
within the legal definition of a delegation.").
7. On the record before us, it does not appear that First Rio requested a hearing on these
motions.
8. Howell v. Texas Workers' Comp. Comm'n, No. 03-02-00502-CV, 2003 Tex. App. LEXIS
7467 (Austin--Aug. 29, 2003, no pet.) (not designated for publication).
9. In re Howell, No. 03-02-00490-CV (Tex. App.--Austin Aug. 14, 2002) (orig. proceeding)
(not designated for publication).
10. See Act of Mar. 28, 1917, 35th Leg., R.S., ch. 103, part II, § 5, 1917 Tex. Gen. Laws 269,
283-84, repealed by Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 6.61, 1989 Tex. Gen. Laws
1, 60-61, repealed by Act of May 12, 1993, 73d Leg., R.S., ch. 269, § 5(2), 1993 Tex. Gen. Laws
987, 1273.
11. Act of May 25, 2001, 77th Leg., R.S., ch. 1456, § 6.04, 2001 Tex. Gen. Laws 5167, 5186
(codified at Tex. Lab. Code Ann. § 413.031(e)).